# Richmond

A. W. Hall Transfer and Storage Company, et al. v. Triangle Transfer and Storage Co., Inc.

June 13, 1975.

Record No. 741134.

Present, All the Justices.

Richard M. Price (*Wallerstein, Goode & Dobbins,* on brief), for appellants.

William T. Wilson; Michael McH. Collins (*Collins & Wilson,* on brief), for appellee.

*Hamill Dice Jones, Jr.,* for State Corporation Commission.

Carrico, J., delivered the opinion of the court.

In the final order from which the appeal of right is taken, the State Corporation Commission awarded Triangle Transfer and Stor-

age Co., Inc., a certificate of public convenience and necessity to transport household goods by motor vehicle. By the terms of the final order, Triangle was authorized to operate "between the Cities of Covington and Clifton Forge and the Counties of Allegheny, Bath, and Botetourt, Virginia, on the one hand, and all points in Virginia, on the other hand."

A. W. Hall Transfer and Storage Company, Covington Transfer and Storage Company, and Weldon Lawrence, Jr., intervened below in opposition to award of the certificate to Triangle. The intervenors are here seeking reversal of the Commission's award.

The substantive question on appeal is whether the Commission erred in finding that public convenience and necessity justified granting of the certificate to Triangle. We cannot, however, reach that question because of a procedural deficiency affecting the authority of the Commission to award Triangle operating privileges to the territorial extent set forth in the final order. The deficiency consists of the failure of the notice, upon which the award was based, to name the cities of Covington and Clifton Forge in the operating territory sought by Triangle.

The record shows that on March 1, 1974, Triangle applied to the Commission for "a certificate of convenience and necessity as a Household Goods Carrier." The application merely listed Triangle's business address in Covington and asserted the need of another "mover" in the "Covington-Clifton Forge-Alleghany County area." Otherwise, the application gave no indication of the territorial extent of Triangle's request for operating authority.

On March 7, 1974, the Commission entered an order docketing the application for hearing on April 16, 1974, and directing that notice of the application and of the time and place of hearing be served upon interested parties, including Covington Transfer and Hall Transfer, two of the present intervenors. The Commission forwarded to Triangle a form for use in providing notice to interested parties. As prepared by the Commission, the form stated that Triangle had applied for a certificate "to conduct operations generally in the following territory: Between points in Virginia." Triangle's counsel, however, amended the form to read: "From all points in Virginia to Alleghany, Bath, Augusta, Rockbridge and Botetourt Counties and from Alleghany, Bath[,] Augusta, Rockbridge and Botetourt Counties to all points in Virginia." The notice, as amended, was served upon the parties listed in the Commission's order.

At the commencement of the hearing before the Commission, counsel for Triangle called attention to the amendment of the notice form. Counsel stated that he had amended the form because the "five counties" listed therein corresponded with the franchise Triangle held with a national household goods carrier. Counsel also indicated that the purpose of amending the form was to "improve [Triangle's] position." When informed by the chairman of the Commission that Triangle would "be held to the notice," counsel for Triangle acquiesced. The hearing then proceeded, and at its conclusion the matter was taken under advisement.

On August 5, 1974, the Commission entered its final order granting Triangle a certificate of public convenience and necessity. In awarding the certificate, the Commission deleted the counties of Augusta and Rockbridge, originally included in Triangle's notice, but added the cities of Covington and Clifton Forge, not named in the notice.

In proper time, the intervenors filed their notice of appeal and assignments of error, asserting, among other grounds, that inclusion of the cities of Covington and Clifton Forge in the operating authority granted Triangle was "in excess of the territory requested by applicant and set forth in its notice." Thereafter, the majority and dissenting opinions of the members of the Commission were filed.

The disagreement among the members of the Commission involved the question whether public convenience and necessity justified award of the certificate to Triangle. With respect to the notice question, Commissioner Shannon stated that, while he believed "the final order and the certificate thereby authorized should both be totally consistent with all prior public notices," he could find no prejudice to anyone by failure of the notice to include the cities of Covington and Clifton Forge.

Commissioners Bradshaw and Harwood, although pointing out that no objection had been raised concerning the notice, took the position that the Commission had jurisdiction to grant operating authority in "any city completely surrounded by any of the five counties identified" in Triangle's notice. Because the notice "identified the authority sought as being to or from a 'five county area' " and because the cities of Covington and Clifton Forge are "wholly surrounded" by Alleghany, one of the counties named in the notice, the majority held that the Commission had jurisdiction to grant Triangle operating authority in the cities.

■ On appeal, Triangle urges us to adopt the view of the majority of the Commission and to hold that, "in the geographic sense," each city located in the five counties named in the notice "was included in the more general boundaries established by naming the various counties." We have already held, however, to the contrary.

In *City of Richmond v. Board of Supervisors of Henrico County*, 199 Va. 679, 684, 101 S.E.2d 641, 644 (1958), we stated that in Virginia "counties and cities are independent of each other politically, governmentally and *geographically*." (Emphasis added.) While this statement was made in a different factual context, we believe it should apply with equal force to the situation in the present case.

■ At first blush, it might appear hypertechnical to rule that where, as here, a city is, in fact, "wholly surrounded" by areas of a single adjacent county, the city is not, for notice purposes, included by naming the county. But we are concerned here with a rule of general application, and when we consider the implications of the view adopted by the majority of the Commission, the necessity of rejecting that view becomes readily apparent.

Under the view adopted by the majority, the Commission had jurisdiction to grant operating authority in "any city completely surrounded by any of the five counties identified" in Triangle's notice. If the majority is correct and if the Commission, in its award, had not deleted Augusta County, one of the counties identified in Triangle's notice, then Triangle would have received operating authority in the cities of Staunton and Waynesboro, which are "wholly surrounded" by Augusta County. This would have been a result, we daresay, which might have surprised even Triangle.

Further, under the view adopted by the majority of the Commission, a notice identifying the requested operating territory as the counties of Amherst, Bedford, and Campbell, which completely surround the city of Lynchburg, would authorize the Commission to grant operating privileges in Lynchburg. Indeed, during oral argument before us, counsel for the Commission candidly admitted that this precise result would follow. And to extend the majority's view yet another step, a notice identifying the requested operating territory as the counties of Chesterfield and Henrico, which completely surround the city of Richmond, would authorize the Commission to grant operating privileges in Richmond. When carried to these hypothetical but inevitable extremes, the view adopted by the majority of the Commission must fall of its own weight.

■ This leaves two questions: (1) whether, by failing to object, the intervenors waived the deficiency in the proceedings, and (2) whether, because the intervenors failed to show any prejudice, the deficiency was harmless. Both these questions may be answered with the general observation that the deficiency affected not only the interests of the parties involved but also, as we have indicated earlier in this opinion, the authority of the Commission to award Triangle operating privileges in the cities of Covington and Clifton Forge. Absent an express waiver of the deficiency by the affected parties, and despite the lack of a showing of actual prejudice, the Commission was without authority to include the cities in its award to Triangle.

A specific observation, however, may be added. The entire problem concerning notice was caused by Triangle. It amended the notice form without naming the cities of Covington and Clifton Forge, thereby failing to make clear an intention to seek operating authority in the cities. At the commencement of the hearing below, Triangle acquiesced in the ruling that it would "be held to the notice" and thereafter failed to assert a clear intention to seek operating authority in the cities. As for the intervenors, they could have been lulled into inaction by the occurrences at the commencement of the hearing and they may have been taken by surprise when, in the final order, the Commission included the cities in the award to Triangle. It was then too late for the intervenors to object to the notice or to show that they had been prejudiced by the deficiency.

For the reasons assigned, the final order of the Commission will be reversed and the case remanded for further proceedings, upon proper notice, not inconsistent with the views we have expressed in this opinion.

*Reversed and remanded.*